UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PATRICK L. QUICK,

                        Plaintiff,           No. 07-CV-6408 CJS

   -vs-

                                            DECISION AND ORDER

STAPLES, INC.,

                        Defendant.

_____

APPEARANCES

For Plaintiff:                Patrick L. Quick, pro se
                               242 Breck Street
                               Rochester, New York 14609

For Defendant:             Devjani Mishra, Esq.
                               Seyfarth Shaw LLP
                               620 Eighth Avenue, Suite 3200
                               New York, New York 10018-1405

INTRODUCTION

This is an action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e *et seq*. Now before the Court is Defendant's motion [#18] for summary judgment. For the reasons that follow, Defendant's application is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to Plaintiff.[1]

---

[1] In support of its motion, Defendant filed a Statement of Facts, as required by Rule 56.1 of the Local Rules of Civil Procedure. Defendant also served Plaintiff with a "Notice to Pro Se Litigants

1

Defendant Staples, Inc. is a retail office supply chain store. Defendant "has a zero tolerance for associate theft of merchandise of services, [sic] regardless of the value that is appropriated." (Affidavit of Jospeh Grimmer ¶ 4). Defendant "consistently terminates associates who violate company policy, regardless of race." *Id*. at ¶ 8.

Plaintiff is an African-American. Defendant hired Plaintiff in 2004 for the position of Supply Associate at its store in Irondequoit, New York. During the next two years, Plaintiff's supervisor, Richard Ostendorf ("Ostendorf"), who was the General Manager of the Irondequoit store, gave him pay increases, and promoted him to the position of Residential Technician. (Ostendorf Affidavit ¶ 4).[2] In his capacity as Residential Technician, Plaintiff repaired customers' computers. *Id*. On July 24, 2006, Ostendorf learned, from the store's Operations Manager, that Plaintiff had shipped a personal item

---

Opposing Summary Judgment," as required by Local Rule 56.2, which stated, in relevant part:

> THE CLAIMS PLAINTIFF ASSERTS IN HIS/HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION by filing his/her own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial. . . . Any witness statements, which may include plaintiff's own statements, must be in the form of affidavits. . . . Pursuant to Rules 7.1(e) and 56.1 of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to file and serve the following papers in opposition to this motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried, followed by citation to admissible evidence. In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court.

(Local Rule 56.2). In opposition to the motion, Plaintiff did not file a memo of law, an affidavit, or "a separate, short, and concise statement of the material facts as to which it is contended there exists a genuine issue to be tried," as required by Local Rule 56.1(b). In such event, Local Rule 56.1© provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

[2]At oral argument, Plaintiff denied that Ostendorf promoted him. According to Plaintiff, Ostendorf had no choice in the matter, because Plaintiff threatened to quit if he did not receive more money.

using the store's UPS account. *Id*. at ¶ 5. Ostendorf investigated the incident, and concluded that Plaintiff had violated Defendant's policy, which resulted in the termination of Plaintiff's employment:

> During my initial interview, I found out that on July 14, 2006, Plaintiff brought his personal motherboard in to the Store's ship center and asked the specialist on duty, Jennifer Leone, to ship it for him. Because Plaintiff's job relates to technology services and could require him to ship customers' defective products back to the manufacturer, Leone did not question his request but shipped his item using Store UPS account. . . . After the initial interview, I notified Joseph Grimmer in the Loss Prevention department on July 26, 2006 to report the incident. . . . On July 28, 2006, Grimmer interviewed Plaintiff and Leone and received their handwritten statements regarding the shipment. Leone stated that she did not know the item was for Plaintiff's personal shipment. . . . After completing the interview, Grimmer notified the incident [sic] and transmitted copies of the written statements to Senior Human Resources Manager, Teresa Mosher. . . . Subsequently, after consulting with Human Resources, we decided to terminate Plaintiff's employment for violation of company policy (theft).

(Ostendorf Aff. ¶ ¶ 6-11).

On July 28, 2006, in connection with Defendant's in-store investigation, Plaintiff gave a written statement, which states, in relevant part:

> I brought in my personal motherboard from home to be shipped in the copy center . . . . [A] conversation rose up between me & Jen [Jennifer Leone] the receiving specialist about my motherboard. She said that she would send it with the freight via UPS. I warned her that this motherboard is my personal board that if there's gonna be a problem, I have no problem going to the copy centers UPS paying for shipping it off. She said that it would be okay, she'll take care of it. [sic]

(Joyce Declaration [#18-3], Exhibit C). The same day, Leone also gave a written statement to Defendant, which states, in relevant part:

> [A]bout one week ago Patrick came to me and told me he had something to ship. He asked me if he should go to copy center or if I should ship it. When I asked him what it was he told me it was a motherboard. I then assumed it was for a tech job [and] told him I could do it. . . . I had not asked specifically if it were personal.

3

(Joyce Declaration [#18-3], Exhibit 2-A).

On September 28, 2006, Plaintiff filed a discrimination complaint with the New York State Division of Human Rights.  In his complaint, Plaintiff stated, in relevant part:

> On July 14, 2006 I brought in my personal motherboard to work to be shipped out in the copy center. . . .  I then spoke to Jen [Jennifer Leone] a white employee who works in the receiving department.  She asked me why I would spend money to have it shipped out in the copy center when she could do it for free with the respondent's UPS service.  I warned her that this was illegal and told her not to do it, but she took the motherboard and shipped it anyway.

(Joyce Declaration [#18-3], Exhibit B).  Thereafter, the Division of Human rights dismissed the Complaint, finding no probable cause to believe that Defendant had discriminated against Plaintiff.  On July 25, 2007, the Equal Employment Opportunity Commission ("EEOC") adopted the findings of the Division of Human Rights, and issued Plaintiff a "Dismissal and Notice of Rights."

On August 20, 2007, Plaintiff commenced the subject action.  In his Complaint, Plaintiff alleges that Defendant discriminated against him by terminating his employment, on the basis of his color. (Complaint [#1]).  As the factual basis of his claim, Plaintiff stated: "Jennifer Leone- person who sent out my package, still has job, was not terminated for sending my package." (*Id*. at 4).

During pre-trial discovery, Defendant deposed Plaintiff.  During his deposition, Plaintiff testified, in relevant part, as follows:

> I said [to Jennifer Leone] I don't think I'm going to go to lunch today because I'm going to have Shawn send my package.  She said why would you pay all your money to send your package when I can send it out for free using the UPS account.  I warned her, I said Jen, I don't know if we should do this, this doesn't seem right.  She is sort of like a manager. She's a three year veteran, she has a ton of experience.  I said I hope you're doing the right thing.

(Quick Deposition at 27). Plaintiff testified that, even though he had a copy of the employee handbook, he did not know whether employees were permitted to ship personal items using the store's account. *Id*. at 31. Nevertheless, he states that he told Leone that shipping the package using the store's account might be wrong, "because of [his] beliefs": "Because of my beliefs I thought that it shouldn't be sent, you know, using Staples' property, but as a one year veteran or one and a half year veteran and she's a three year veteran maybe she knows something that I don't[.]" *Id*. at 58. Plaintiff further testified:

> Q. But you warned Jennifer Leone that it was wrong to –
>
> A. No. I warned her that something could be wrong here. I mean, it just didn't sound right to me. I mean, why would you, you know, send it there, you know, when we have a – I thought we had a center up here, a copy center for customers. I don't know. I'm asking these questions, but maybe I'm saying something wrong because she's way over me. She's three years[3] and maybe I don't know something.

*Id*. at 31. Additionally, Plaintiff testified that he offered to pay for the shipment: "I offered to pay. . . . Always willing to pay. I asked her, Jennifer, here is $10. You know, something doesn't seem right here. I give you this $10 and I hope you take care of everything." *Id*. at 32.[4] Plaintiff contends that he gave the money to Leone, even after she told him that she would ship the package for "free:" "Q. If she said it was for free, why did you give her $10? A. She said she'll ship it for free. That's not what I want and

---

[3] Plaintiff contends that Leone was "way over" him because she had worked for the company for three years, while he had worked there two years.

[4] Plaintiff claims that he knew the cost of shipping the motherboard before he spoke with Leone, because he had gotten a price quote from the copy center, where, pursuant to company rules, he should have mailed the package. (Plaintiff Deposition at 57). Plaintiff indicated that the shipping fee was only two dollars (*Id*. at 48), but he gave claims that he gave Leone ten dollars and did not expect change. (*Id*. at 57).

5

that's not what I'm going to do.  I know nothing in life is free.  That's why I gave her the $10 so I was covered." *Id*. at 63-64.  Plaintiff further insists that he told Leone that the shipment was his "personal package from home." *Id*. at 33.  According to Plaintiff, Leone responded, "Don't worry.  I'll take care of it." *Id*. at 35.  However, Plaintiff admitted that on July 28, 2006, when Grimmer questioned him, he denied any knowledge of the shipment:

> I went in the office.  Joe Grimmer was there and he said, we want to talk to you about a package that got sent.  I said okay.  What do you want to talk about?  He said, a package got sent using the store's account.  I said I don't know anything about that.  It's got nothing to do with me.  He said well, we think it was your personal package.  I said, well, if it was, sir, I had nothing to do with that, and that's it.

*Id*. at 41.  On this point, Plaintiff explained that, by warning Leone, he believed that the shipment was not his fault: "I warned her, I did my part I thought by warning her that this was mine and she insisted on doing it." *Id*. at 42.  In fact, Plaintiff continues to maintain that he was not personally involved in the incident: "No, I'm not involved.  Only way I'm involved is the item is mine, that's it.  Other than that I'm not involved with that." *Id*. at 68.

During his employment with Staples, Plaintiff never complained of discrimination or heard anyone comment on his race. *Id*. at 72.  Nevertheless, Plaintiff believes that his firing was racially motivated, because he had an "impeccable record," and because "nobody else was fired." *Id*. at 53-54.  When asked to elaborate, Plaintiff stated as follows:

> Q. Upon what facts do you base your allegation that your termination was in violation of Title VII?
>
> A. Again, everybody involved is white.  I'm the only black guy who got terminated.  Why wasn't she terminated too when it's a two party deal?

6

> She should have been terminated and she has not been terminated to this day. She still has a job, and that's that.
>
> Q. Anything else?
>
> A. No

*Id*. at 69. Plaintiff maintains that his supervisors believed Leone, but should have believed him: "Q. Do you think Staples believed Jennifer Leone? A. Exactly. That's what I think they did, they believed her. Actually, they didn't want to hear my story." *Id*. at 111.

On June 13, 2008, Defendant filed the subject summary judgment motion. Defendant contends that Plaintiff cannot demonstrate a prima facie case of discrimination, because "the undisputed facts actually undermine any possible inference of racial discrimination." (Defendant's Memo of Law [#18-2]). Defendant maintains, for example, that Plaintiff cannot demonstrate that he was treated less-favorably than a similarly-situated white employee. Defendant also states that Ostendorf, the supervisor who terminated Plaintiff, had previously given him promotions and raises, and that Plaintiff's position was filled by a person in his same protected class. Alternatively, Defendant argues that, even if Plaintiff could demonstrate a prima facie case, that there is a legitimate non-discriminatory reason why Plaintiff's employment was terminated: "Plaintiff was terminated because he knowingly violated Staple's policy against personal shipments using the Store UPS account." (*Id*. at 8). In that regard, Defendant contends that it reasonably believed Leone's version of events, rather than Plaintiff's.

In opposition to Defendant's motion, Plaintiff filed an unsworn, two-page statement, along with certain exhibits. (Docket [#21]). In his statement, Plaintiff

reiterates his belief that Leone should have been disciplined instead of him. For example, he states:

> So you see in reality the big issue here is that 2 people were involved in the matter, one of the two gets fired for something that he didn't do, the other is still employed at Staples for something that she admits[5] she did. So there is Racism/Favoritism in this matter where either the both should have got fired or neither. All I'm asking is to really look into the situation because to me something is just not stable.

(Plaintiff's Response [#21] at 3).[6]

ANALYSIS

*Rule 56*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to

---

[5] Here, Plaintiff implies that Leone admitted to wrongdoing. She did not.

[6] Plaintiff also alleges that other employees violated other store policies and were not disciplined. However, even assuming that such statements were relevant, they are hearsay, and are therefore not sufficient to create a triable issue of fact.

support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

*Title VII*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations

omitted).  Title VII discrimination claims are analyzed under the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), cert den. 534 U.S. 993 (2001).  Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[7]  To establish a prima facie case of discrimination, a plaintiff must show four things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 466-467 (citations omitted).  If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action].  At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.  Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination.  In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . .  is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

---

[7]It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also, Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

At the third tier of the McDonnell Douglas test, simply proving that the employer's proffered reason was false may, or may not, establish the required proof of discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)). In this regard, "[t]he relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)(citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d

Cir. 1985), *cert. den*. 474 U.S. 829.

In the instant case, Defendant contends that Plaintiff has failed to demonstrate a prima facie case of racial discrimination. However, even assuming, *arguendo*, that Plaintiff has demonstrated a prima facie case, the Court agrees with Defendant's alternative argument, which is that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Simply put, Defendant believed that Plaintiff violated the company's theft policy. It is undisputed that Defendant had a zero-tolerance policy for such behavior, and that it had previously terminated other employees for similar activity. Plaintiff insists that Defendant should not have believed Leone's version of events. However, Plaintiff has failed to produce any evidentiary proof, in admissible form, that Defendant's proffered reason for his discharge is false, or that racial animus played a role in Defendant's decision. Plaintiff has not provided any evidence that Defendant actually disbelieved Leone. To the contrary, Plaintiff agrees that Defendant believed Leone's version of events. (*See*, Plaintiff's Deposition at 111). Accordingly, even assuming, *arguendo*, that Plaintiff was in fact innocent of any wrongdoing, Defendant's summary judgment motion would have to be granted. *See, Ascione v. Pfizer, Inc.*, 312 F.Supp.2d 572, 578 (S.D.N.Y. 2004) ("As long as Pfizer terminated Ascione because it reasonably *believed* she overstated her overtime records (as opposed to because of a discriminatory reason), and produces some evidence forming the grounds for that belief, Pfizer's motion must be granted.") (emphasis in original, citations omitted), *aff'd* 138 Fed.Appx. 347 (2d Cir. Jun. 29, 2005).

CONCLUSION

Defendant's motion for summary judgment [#18] is granted and this action is dismissed.

SO ORDERED.

Dated: Rochester, New York
     March 3, 2009

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge